UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ESPINO TIRE & WHEEL, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | SA-25-CV-710-FB (HJB) |
| | § | |
| ESPINO'S TIRES SAN ANTONIO, LLC, | § | |
| | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaims for Failure to State a Claim Under Rule 12(b)(6) (Docket Entry 33) and Defendant's Motion for Partial Summary Judgment on the Claim of Common Law Trademark Infringement (Docket Entry 34). Pretrial matters have been referred to the undersigned. (Docket Entry 14.) For the reasons set out below, I recommend that Plaintiff's motion (Docket Entry 33) be **GRANTED IN PART** and **DENIED IN PART** and that Defendant's motion (Docket Entry 34) be **DENIED**.

## I. Jurisdiction.

The Court has original jurisdiction over the federal claims in this trademark dispute pursuant to 28 U.S.C. § 1231, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The undersigned has the authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

## II. Background.

Plaintiff Espino Tire & Wheel, Inc. is owned by Reynaldo Espino Jr. (Docket Entry 11, at 1–3; Docket Entry 37-1, at 2.) Plaintiff has owned and operated "Espino Tire & Wheel" in San Antonio since 1999, using the marks "Espino" and "Espino Tire & Wheel" in connection with tire and automative services and related products. (Docket Entry 37-1, at 2.) Defendant Espino's Tires San Antonio, LLC is owned by Hector Espino Jr. (Docket Entry 29, at 26.) Defendant owns and operates "Espino's Tire and Auto Center," with locations in Pharr and Mission, Texas. (*Id.*)

Toward the end of 2024, Plaintiff discovered that Defendant planned to open a third location of Espino's Tire and Auto Center in San Antonio. (Docket Entry 37-1, at 3.) On January 27, 2025, Plaintiff sent Defendant a letter, demanding that it "cease and desist [its] plans to open up a location in San Antonio or the surrounding areas under the name 'Espino's Tire & Auto Center' or any mark confusingly similar thereto." (Docket Entry 37-2, at 4.) But on February 4, 2025, Defendant opened its San Antonio location as planned. (Docket Entry 11, at 7; Docket Entry 29, at 26.)

Plaintiff filed this lawsuit on June 23, 2025. (Docket Entry 1.) Plaintiff filed an amended complaint on August 7, 2025—its live pleading. (Docket Entry 11.) Plaintiff's amended complaint presents two claims for trademark infringement—under the Lanham Act, 15 U.S.C. § 1114, and Texas common law, respectively. (Docket Entry 11, at 15–17.) Defendant answered the amended complaint on November 24, 2025, asserting three counterclaims—two seeking declaratory judgment and one seeking damages for actual or attempted monopolization in violation of the Sherman Antitrust Act, 15 U.S.C. § 2. (Docket Entry 29, at 27–30.)

**III. Discussion.**

Plaintiff moves to dismiss Defendant's counterclaims (Docket Entry 33), and Defendant moves for summary judgment on Plaintiffs common-law trademark infringement claim (Docket Entry 34). Each motion is addressed separately below, beginning with Plaintiff's motion.

**A. *Plaintiff's Motion to Dismiss Defendant's Counterclaims.***

1. *Legal Standard.*

"A court must dismiss a complaint as a matter of law when the plaintiff fails 'to state a claim upon which relief can be granted.'" *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024) (quoting FED. R. CIV. P. 12(b)(6)), *cert. denied*, 145 S. Ct. 1930 (2025). "Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Sims v. Allstate Fire & Cas. Ins. Co.*, 746 F. Supp. 3d 417, 420 (W.D. Tex. 2024). To survive dismissal, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, "the Court assumes the truth of well-pleaded factual allegations and reasonable inferences therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (citation modified). The Court does not assume the truth of "legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement," *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citation modified), as all of the above "are not well-pleaded facts for purposes of evaluating a complaint," *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019) (citation modified).

The Court "must not go outside the pleadings" when resolving a Rule 12(b)(6) motion. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). This means the Court's inquiry is ordinarily "limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). But the Court has discretion to "consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

2. *Facts Alleged in Support of Defendant's Counterclaims*.

Defendant is an LLC owned by Hector Espino, Jr. (Docket Entry 29, at 24.) In 1993, Hector's father opened a tire shop in Pharr, Texas, under the name "Espino Brothers." (*Id.* at 25.) Hector soon followed in his father's footsteps, with Defendant opening its own tire shops under the name "Espino's Tire and Auto Center," in Pharr and Mission, Texas. (*Id.* at 26.) All the while, Plaintiff had owned and operated several of its own competing tire shops, some within four miles of Defendant's, under the name "Espino Tire & Wheel." (*Id.* at 5, 26.) These competing stores coexisted for nearly 30 years. (*Id.* at 26.)

In 2025, Defendant opened a new Espino's Tire and Auto Center in San Antonio, Texas, where Plaintiff already had Espino Tire & Wheel stores in operation. (Docket Entry 29, at 26.) Indeed, Plaintiff "already ha[d] a dominant market position," in San Antonio and throughout South Texas, for tires and custom wheels and rims. (*Id.*) As a result of this litigation, Defendant is unsure "where it may build its stores without violating" Plaintiff's asserted trademarks, if any. (*Id.*)

Based on the above factual allegations, Defendant asserts three counterclaims. First, he seeks a declaratory judgment that either declares that he does not violate Plaintiff's common law

trademark, if any, by using the name "Espino" for his tire shop in Bexar County, Texas, or specifies where in Bexar County he may open a store with the name "Espino" without violating Plaintiff's common law trademark, if any. (Docket Entry 29, at 27–28.) Second, Defendant seeks a declaratory judgment that either declares that he does not violate Plaintiff's common law trademark, if any, by using the name "Espino" for his tire shops outside of Bexar County, or otherwise specifies the counties where he may permissibly use the name "Espino" for his tire shops without violating Plaintiff's common law trademark, if any. (*Id.* at 28–29.) And lastly, Defendant asserts a claim for actual or attempted monopolization, in violation of the Sherman Antitrust Act, 15 U.S.C. § 2. (*Id.* at 29–31.)

3. *Analysis*.

This Report and Recommendation first considers Plaintiff's arguments as to Defendant's declaratory-judgment counterclaims, then considers the Sherman Act counterclaim.

a. Declaratory Judgment.

Plaintiff argues that the Court should dismiss the declaratory-judgment counterclaims on the ground that they "do not seek resolution of any matter that will not already be decide as part of Plaintiff's claims." (Docket Entry 33, at 4.) As Plaintiff points out, ample law supports the Court's authority to dismiss duplicative declaratory judgment counterclaims. *See, e.g.*, *Bowman v. Bella Estancias, LLC*, No. 3:17-CV-91-KC, 2018 WL 1115202, at *3 (W.D. Tex. Feb. 15, 2018) ("Pursuant to Federal Rule of Civil Procedure 12(b)(6), district courts in the Fifth Circuit regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit.") (collecting cases); *City of Waco v. Kleinfelder Cent., Inc.*, No. 6:15-CV-310 RP, 2016 WL 5854290, at *9 (W.D. Tex. Oct. 6, 2016) ("[A] declaration is unnecessary because Plaintiff has already placed the issues relevant to Defendant's counterclaim

before the Court."). This rule applies as much in trademark cases as elsewhere. *See Charles S. Ramon LLC v. Estrella Provider Servs., LLC*, No. SA-23-CV-1171-FB, 2024 WL 4957605, at *1 (W.D. Tex. Sept. 26, 2024) (dismissing redundant declaratory judgment counterclaim in trademark case); *Elepreneurs Holdings, LLC v. Benson*, No. 4:21-CV-26, 2021 WL 5140769, at *5 (E.D. Tex. Nov. 4, 2021) (same). Plaintiff contends that the Court should therefore dismiss Defendant's declaratory judgment counterclaims for non-infringement because its own claims "already require the Court to resolve whether Plaintiff has enforceable rights in the Espino Marks and whether Defendant's use of ["Espino's Tires and Auto Center"] . . . for its goods and services constitutes . . . common law trademark infringement." (Docket Entry 33, at 5.) According to Plaintiff, Defendant's declaratory judgment counterclaims "merely dispute Plaintiff's claims for relief and add nothing to the existing lawsuit." (*Id.*)

Defendant responds by arguing that the declaratory judgments it seeks are not duplicative of Plaintiff's claims because the former "seeks broader relief." (Docket Entry 35, at 5.) Relying on a century-old, now-reversed opinion from the Texas Court of Civil Appeals in Beaumont, Defendant argues that common law trademarks in Texas "exist only in the locale where [the owner's] particular business exists," and "do[] not extend to other areas where the owner of the trademark does not yet do business." (*Id.* at 5 (citing *A B C Stores v. T. S. Richey & Co.*, 266 S.W. 551, 553 (Tex. Civ. App.—Beaumont 1924), *rev'd*, 280 S.W. 177 (Tex. Comm'n App. 1926).) Thus, Defendant argues that even if Plaintiff "prevails on its claim that it has a common law trademark in San Antonio, that will not resolve whether the common-law trademark extends to other locations—such as Austin, or Waco, or Dallas. . . ." (Docket Entry 35, at 6.) Put otherwise, regardless of who prevails on Plaintiff's common law trademark infringement claim, it still would "not resolve whether [Defendant] can use [its] Espino mark in places outside of San Antonio." (*Id.*

at 7.) Accordingly, Defendant argues that, absent resolution of its declaratory judgment counterclaims, the parties will be condemned "to play trademark whack-a-mole in future litigation over their respective rights throughout Texas." (*Id.*)

Although it cites only a single reversed opinion, Defendant is nevertheless correct on the law. "Common-law trademark rights are limited geographically and extend only to the areas in which the mark has actually been used in commerce." *Oh v. Smile Land Fam. Dental, PLLC*, No. 5:25-CV-1536-MA, 2026 WL 2045478, at *6 (W.D. Tex. July 10, 2026) (collecting cases); *see also BankTEXAS, N.A. v. First Bank*, No. 05-96-497-CV, 1998 WL 12658, at *2 (Tex. App.—Dallas Jan. 15, 1998, no pet.) ("An enforceable right to a trademark is acquired at common law by the person who first adopts and uses it in a particular geographic area."); *Reese Finer Foods, Inc. v. El Rio Corp.*, No. A-85-CA-640, 1987 WL 15892, at *1 (W.D. Tex. Mar. 30, 1987) (holding that scope of party's common law trademark was confined to "*the geographical area of its use*") (quoting *Cano v. Macarena*, 606 S.W.2d 718, 722 (Tex. App.—Corpus Christi 1980, writ dism'd)). Accordingly, the geographical limitation of a common-law trademark would allow a declaratory judgment to be viewed as non-duplicative.

In its reply, however, Plaintiff persuasively argues that Defendant's first declaratory judgment counterclaims still must be dismissed. That counterclaim concerns whether Defendant infringes any of Plaintiff's common law trademarks by using the word "Espino" to sell tires in Bexar County. (Docket Entry 29, at 27–28.) Plaintiff argues that this counterclaim is duplicative, even considering the geographical limitations discussed above, because Plaintiff's common law trademark infringement claim "expressly prays for an injunction prohibiting Defendant from using the name ['Espino Tire'] . . . in San Antonio and the surrounding areas." (Docket Entry 36, at 12.) Plaintiff's position is that there is no "meaningful difference between 'San Antonio and the

surrounding areas' and 'Bexar County.'" (*Id.*) Instead, "'San Antonio and the surrounding areas' subsumes Bexar County, Texas." (*Id.*)

Plaintiff's argument is well-taken. Bexar County geographically includes San Antonio and the surrounding area. And according to the most recent data from the United States Census Bureau, nearly 72 percent of Bexar County residents live in San Antonio—an estimated 1,548,422 out of 2,160,088.[1] Accordingly, resolving Plaintiff's claim that Defendant violates its trademarks by using "Espino" to sell tires in San Antonio and the surrounding area would effectively resolve the question presented in Defendant's first declaratory judgment counterclaim—*viz.*, whether and to what extent Defendant's using "Espino" to sell tires in Bexar County violates Plaintiff's common law trademark rights.

As to Defendant's second declaratory judgment counterclaim, Plaintiff argues in its reply that Defendant is essentially requesting an advisory opinion because it only "operates a single store in San Antonio, Texas," such that "the only current actual controversy . . . is whether Defendant's use of ["Espino's Tire and Auto Center"] in San Antonio constitutes unfair competition or trademark infringement." (*Id.*) But Defendant has expressly alleged that it owns two stores outside of San Antonio and Bexar County—one in Pharr and the other in Mission, Texas. (Docket Entry 29, at 26.) And the Court must accept those allegations as true. *See Vullo*, 602 U.S. at 181. Thus, Defendant's second declaratory judgment counterclaim does not necessarily "seek resolution of matters that will already be resolved as part of [Plaintiff's] claims," *Bowman*, 2018 WL 1115202, at *3.

[1] *See* https://www.census.gov/quickfacts/fact/table/sanantoniocitytexas/PST045225 and https://www.census.gov/quickfacts/fact/table/bexarcountytexas/PST045225.

Accordingly, Plaintiff's motion to dismiss Defendant's declaratory judgment counterclaims should be granted in part and denied in part. The Court should dismiss Defendant's first declaratory judgment counterclaim as duplicative. Defendant's second declaratory judgment counterclaim should proceed.

b. Sherman Act.

Defendant asserts a counterclaim for violation of § 2 of the Sherman Antitrust Act, which makes it unlawful to "monopolize" or "attempt to monopolize" an area of "trade or commerce." 15 U.S.C. § 2. Defendant alleges that Plaintiff has "market dominance" in the tire, rim, and wheel customization market in South Texas, which "allows [it] to mark up [its] rates for performing vehicle customizations involving tires, wheels, and rims." (Docket Entry 29, at 30.) From this, Defendant concludes that Plaintiff has "monopolist power." (*Id.*) And Defendant alleges that Plaintiff "maintain[s] [its] monopoly power" by using "litigation," like this suit, "to stifle competition" and "alleging that other tire shops with the Espino name violate trademarks when those other stores begin to pose competition." (*Id.*) Alternatively, Defendant alleges that Plaintiff is "engaged in attempted monopolization of the high-end vehicle customization market involving tires by engaging in anticompetitive conduct"—to wit, the "pursuit of a baseless legal action asserting a common-law trademark against [Defendant]." (*Id.* at 30–31.)

To state a counterclaim for unlawful monopolization, Defendant must plausibly allege "that . . . [Plaintiff] (1) possesses monopoly power in the relevant market and (2) achieves or maintains its monopoly power through exclusionary—anticompetitive—conduct." *Doctors Hosp. of Laredo v. Cigarroa*, 782 F. Supp. 3d 406, 456 (W.D. Tex. 2025). With regard to the first element, "a market share of less than 50 percent is insufficient for a monopolization claim." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1190, 1197 (S.D. Tex. 2009)

(collecting cases). With regard to the second, conduct is not exclusionary unless it has "an anticompetitive effect; it must harm the competitive process and thereby harm consumers, and harm to one or more competitors will not suffice." *Id.* (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)).

To state a counterclaim for attempted monopolization—Defendant's alternative claim—Defendant must plausibly allege that Plaintiff "[(1)] has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Cigarroa*, 782 F. Supp. 3d at 456. "[A] market share of below ten percent," absent special market conditions, "will not support a finding of attempt to monopolize as a matter of law." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 385 (E.D. La. 2013) (citing *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 491 (5th Cir. 1984)).

Plaintiff argues that Defendant has failed to plausibly allege its counterclaim because, *inter alia*, it has not adequately identified the relevant market that Plaintiff allegedly monopolized or attempted to monopolize. (Docket Entry 33, at 7.) The relevant market consists of "products that are 'interchangeable in use' and for which there is a 'cross-elasticity of demand' between the product and substitutes for it." *Silicon Servs. Consortium, Inc. v. Applied Materials, Inc.*, No. A-06-CA-51-LY, 2007 WL 9701128, at *3 (W.D. Tex. Feb. 16, 2007) (quoting *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 626 (5th Cir. 2002)). The relevant market also has a geographical component, limited to the "area in which the seller operates and to which buyers can practicably turn for supplies." *Apani Sw., Inc.*, 300 F.3d at 626. Furthermore, to plausibly allege a monopolization or attempted monopolization claim, the claimant must present allegations as to the alleged monopolist's "market share," "the size of the product market," "the identities of or market shares of [other] competitors," and any "substitute products within the product market."

*Wickfire, LLC v. Trimax Media, Inc.*, No. A-14-CA-34-SS, 2016 WL 4119917, at *6 (W.D. Tex. Mar. 25, 2016) "Whether a relevant market has been identified is usually a question of fact," but when a claimant "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, . . .a motion to dismiss may be granted." *Apani Sw. Inc,* 300 F.3d at 628.

Plaintiff argues that Defendant failed to allege the relevant market with reference to interchangeability, cross-elasticity, or geography, instead only loosely and inconsistently describing the market as "the high-end vehicle customization market involving tires," the "tire business in South Texas," or the market in "South Texas for handling vehicle customization involving tire[s], wheels, and rims." (Docket Entry 33, at 7 (quoting Docket Entry 29, at 30–31).) Furthermore, Plaintiff argues that Defendant has failed to allege "the size of the relevant market, the other competitors in the relevant market, or Plaintiff's market share in the relevant market." (*Id.* at 8 (citing *Wickfire*, 2016 WL 4119917, at *7 (dismissing attempted monopolization claim for failing to include such allegations)).)

Defendant does not dispute any of this, but argues that it "does not need to define a market if it can support its claim . . . with direct evidence that that [Plaintiff] . . . controlled prices or excluded competition." (Docket Entry 35, at 12 (quoting *Rio Grande Royalty*, 786 F. Supp. 2d at 1197).) Even if this were true, Defendant does not make any direct allegations that Plaintiff did either. Indeed, the only allegations Defendant makes to support its counterclaim is that Plaintiff describes itself on its website as the industry "leader" in San Antonio, and provides its services to customers at "mark[ed] up" prices. (Docket Entry 29, at 26, 30; Docket Entry 35, at 12.) These allegations do not support a reasonable inference of monopoly or attempted monopoly. The self-serving statement on Plaintiff's website is mere advertising puffery—not a "representation of a

specific material fact" that "would make . . . [Defendant's] [counter]claim[] plausible." *Allen v. State Farm Lloyds*, No. 4:15-CV-60, 2015 WL 2156715, at *2 (E.D. Tex. May 7, 2015) (disregarding puffery from the universe of factual allegations in ruling on 12(b)(6) motion). Thus, that statement does nothing to "nudge [Defendant's] [counter]claim[] across the line from conceivable to plausible." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020).

Additionally, even if Plaintiff charges more for its goods and services than its competitors, as Defendant alleges, "high prices are not anticompetitive in and of themselves." *RecoveryX Livingston L.L.C. v. City of Livingston*, 829 F. Supp. 3d 131, 155 (E.D. Tex. 2026); *see BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 529 (5th Cir. 2022). One may charge higher prices for any number of reasons, including higher input costs or superior quality. To be actionable, "high prices must be *connected* to anticompetitive conduct." *RecoveryX Livingston*, 829 F. Supp. 3d at 144 (citing *Verizon Commc'ns Inc. v. L. Offs. Of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004)). As Plaintiff correctly observes, Defendant alleges no anticompetitive conduct other than Plaintiff's "initiat[ing] this [trademark] lawsuit." (Docket Entry 33, at 10.) Obviously, the present lawsuit cannot be the cause of Plaintiff's alleged pre-existing higher prices.

Based on the foregoing, Defendant has not plausibly alleged monopolization or attempted monopolization. Accordingly, the Court should grant Plaintiff's motion to dismiss Defendant's Sherman Act counterclaim.

### *B. Defendant's Motion for Summary Judgment on Plaintiff's Common-Law Infringement Claim.*

#### 1. *Legal Standard*.

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Hayes v. Locke Supply Co.*, 724 F. Supp. 3d 609, 612 (E.D. Tex. 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Summary judgment is warranted when

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A disputed fact is material when it might affect the outcome of the suit under the governing law." *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (citation modified). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation modified).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying the record evidence which it believes demonstrates the absence of a genuine issue of material fact." *Martin v. Petty*, 699 F. Supp. 3d 547, 555 (S.D. Tex. 2023) (citation modified). "If the moving party fails to meet this initial burden, the motion must be denied." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014). When the non-movant bears the burden of proof at trial, as here, the moving party "may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (citation modified).

If the movant meets its initial burden, "the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (citation modified). To do so, the non-movant "must identify specific evidence in the record and articulate the precise manner in which the evidence supports his claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (citation modified). The non-movant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citation modified).

In ruling on a motion for summary judgment, the Court need only consider the parties' cited materials. FED. R. CIV. P. 56(c)(3). "[I]t is not the trial court's obligation to sift through the record in search of evidence to support a party's claims; instead, it is the party's burden to identify specific evidence in the record, and to articulate the precise manner in which that evidence support[s] its claim." *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 443 (5th Cir. 2024) (citation modified). The Court "may not make credibility determinations or weigh the evidence" when considering whether summary judgment is appropriate. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, "facts that are subject to genuine dispute are viewed in the light most favorable to [the non-movant]," *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 749–50 (5th Cir. 2023), and the Court "construe[s] all reasonable inferences in [the non-movant's] favor," *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).

2. *Analysis*.

"Where a trademark infringement action is brought under Texas common law (as in the case here), courts in the Fifth Circuit analyze the claim under the Lanham Act." V*iacom Int'l Inc. v. IJR Cap. Invests., LLC*, 242 F. Supp. 3d 563, 568 (S.D. Tex. 2017), *aff'd*, 891 F.3d 178, 184 (5th Cir. 2018) ("A trademark infringement action under Texas common law is analyzed in the same manner as a Lanham Act claim."); *see also Molzan v. Bellagreen Holdings, L.L.C.*, 112 F.4th 323, 332 n.11 (5th Cir. 2024) ("[T]rademark infringement under Texas common law is the same as under the Lanham Act."). Texas appellate courts do the same. *See Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("The elements in common law trademark infringement under Texas law are the same as those under federal trademark law."); *All Am. Builders, Inc. v. All Am. Siding of Dall., Inc.*, 991 S.W.2d 484, 488 (Tex. App.—Fort Worth 1999, no pet.) ("The issues in a common law trademark

infringement action under Texas law are no different than those under federal trademark law."); *Zapata Corp. v. Zapata Trading Intern., Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ) (same). Accordingly, even when ruling on common law trademark infringement claims under Texas law, courts "look to the Lanham Act and cases thereunder for generally accepted principles of substantive trademark law." *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 738 (Tex. App.—Dallas 2012, no pet.).

"To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 720 (5th Cir. 2024). "To be legally protectable, a mark must be distinctive in one of two ways: (1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 451 (5th Cir. 2017) (citation modified). "Marks are classified along a spectrum in order of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 80 F.4th 607, 618 (5th Cir. 2023). "While suggestive, arbitrary, and fanciful marks are inherently distinctive, generic marks cannot be distinctive, and descriptive marks are distinctive only if they have acquired secondary meaning." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (citation modified). "Personal names—both surnames and first names—are generally regarded as descriptive terms which require proof of secondary meaning." *Rex Real Estate*, 80 F.4th at 619; *see Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 747 (W.D. Tex. 2014) (same); 2 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 13:2 (5th ed. 2024) (henceforth "MCCARTHY") ("Personal names . . . . can be protected as trademarks only upon proof that through usage, they have acquired distinctiveness and secondary meaning.").

Defendant moves for partial summary judgment on Plaintiff's common-law trademark infringement claim, arguing that Plaintiff "cannot show that it owns the name 'Espino,' that the name 'Espino' is legally eligible for protection from use by other persons named Espino, or that the name 'Espino Tires and Wheels' is eligible for protection under Texas law." (Docket Entry 34, at 8). Defendant contends that, under Texas common law, "there can be no exclusive appropriation of a family surname, to the exclusion of those who possess the same surname." (*Id.* at 9 (quoting *Goidl v. Advance Neckwear Co.*, 123 S.W.2d 865, 866 (1939)).) In addition to *Goidl*, Defendant cites to the Texas Supreme Court's decision in *Hanover Mfg. Co. v. Ed Hanover Trailers, Inc.*, which "recognized the right of every person to use his own name in his own business . . . . in the absence of fraud, contract, or estoppel." 434 S.W.2d 109, 112 (Tex. 1968) (citing *Goidl*, 123 S.W.2d at 866). And *Goidl* declared that every person possesses such a right, "even though [they] may thereby interfere with and injure the business of another bearing the same name." 123 S.W.2d at 866. A few Texas appellate courts have adhered to this rule announced in *Goidl* and reaffirmed in *Hanover*, one as recently as in 1994. *See Thompson v. Thompson Air Conditioning & Heating, Inc.*, 884 S.W.2d 555, 559 (Tex. App.—Texarkana 1994, no writ); *see also Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing & Heating Co., Inc.*, 695 S.W.2d 75, 78 (Tex. App.—San Antonio 1985, no writ); *Haltom v. Haltom's Jewelers, Inc.*, 691 S.W.2d 823, 825 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.). Applying the rule to this case, Defendant argues that, since there is no evidence of fraud, contract, or estoppel, it is entitled to use the name Espino under Texas common law and, hence, entitled to summary judgment on Plaintiff's claim. (Docket Entry 34, at 13.)

Plaintiff responds that there is no longer a special right under Texas common law preventing one person from trademarking their own name to the exclusion of junior users of the same name. It argues that that Defendant's cited legal precedents holding otherwise—*Hanover*,

434 S.W.2d 109; *Goidl*, 123 S.W.2d 865; *Thompson*, 884 S.W.2d 555; and *Haltom*, 691 S.W.2d 823—are "outdated" and inaccurate representations of the present-day common law. (Docket Entry 37, at 10–13.)

Plaintiff's argument is well-taken. After all, it is well settled that Texas trademark common law simply tracks federal trademark law. *See Molzan*, 112 F.4th at 322 n.11; *Viacom Int'l*, 891 F.3d at 184; *Streamline Prod. Sys.*, 851 F.3d at 450; *Condom Sense*, 390 S.W.3d at 738; *Hot-Hed*, 333 S.W.3d at 730; *All Am. Builders*, 991 S.W.2d at 488; *Zapata Corp*, 841 S.W.2d at 47. Indeed, when the Texas Supreme Court held that a person could not be prevented from using their own name for their own business—absent fraud, contract, or estoppel—it did so because that was what *federal* trademark law required in 1939. *See Goidl*, 123 S.W.2d at 312 (citing *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169 (1896) and *Brown Chem. Co. v. Meyer*, 139 U.S. 540 (1891)). But it was only "in the early years of trademark law . . . that no one seller, by the use of his or her name as a mark, . . . [was] allowed to prevent others with the same name from using their name in business." MCCARTHY § 13:5. "Today," however, "the view that everyone has an 'absolute' or 'sacred right' to use one's own personal name as a mark has been uniformly rejected." *Id.* § 13:8. Indeed, the Fifth Circuit has unequivocally held that "a man has no absolute right to use his own name, even honestly, as the name of his merchandise or his business." *John R. Thompson Co. v. Holloway*, 366 F.2d 108, 113 (5th Cir. 1966). Instead, when a person uses his own name for his goods or services, it "becomes a trademark subject to trade regulation designed to prevent confusion of the public." *Stubbs Collections, Inc. v. Davis*, No. CIV. A. 3-99CV2440-P, 2000 WL 381947, at *6 (N.D. Tex. Apr. 14, 2000) (citing *John R. Thompson Co*, 366 F.2d at 113)).

Accordingly, for purposes of Plaintiff's common law trademark infringement claim, "the issue is not whether [Defendant] has a right to use his name, but whether his use of that name

creates a likelihood of confusion with [Plaintiff's] use." *Stubbs Collections*, 2000 WL 381947. And because names are "descriptive terms," the fate of Plaintiff's common law infringement claim will ultimately turn on whether its marks have acquired "secondary meaning." *Rex Real Estate*, 80 F.4th at 619; *see Amy's Ice Creams, Inc.*, 60 F. Supp. 3d at 747; MCCARTHY § 13:2.

Defendant did not address the issue of secondary meaning at all in its motion. Instead, Defendant rests its entire argument on the claim that its owner "has an absolute right—a sacred right—to use his surname in the business he runs," regardless of whether it injures Plaintiff as the senior user by causing confusion to the purchasing public. (Docket Entry 34, at 13.) As this absolute rule is no longer the law, Defendant has not met its initial burden of "identifying the record evidence which it believes demonstrates the absence of a genuine issue of material fact." *Martin*, 699 F. Supp. 3d at 555 (citation modified). As such, its "motion must be denied." *Pioneer Expl.*, 767 F.3d at 512. However, even if Defendant had raised the secondary-meaning issue as a basis for summary judgment, Plaintiff has produced some evidence of secondary meaning—*viz.*, evidence of "the length and manner of use of [its] mark[s]" (Docket Entry 11-1; Docket Entry 37-1), "use of the mark . . . in newspapers" (Docket Entry 11-3), and "direct consumer testimony" (Docket Entry 37-3). *See Amy's Ice Creams*, 60 F. Supp. 3d at 748 (listing the types of evidence that can be used to prove secondary meaning). This evidence is sufficient to raise a factual issue as to Plaintiff's common-law infringement claim.

For all these reasons, Defendant's motion for summary judgement should be denied.

## IV. Recommendation.

Based on the foregoing, I recommend that Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaims for Failure to State a Claim Under Rule 12(b)(6) (Docket Entry 33) be **GRANTED IN PART** and **DENIED IN PART**, and that Defendant's Motion for Partial Summary

Judgment on the Claim of Common Law Trademark Infringement (Docket Entry 34) be **DENIED**. Defendant's Sherman Act counterclaim (Count III) and its first declaratory judgment counterclaim (Count I) should be **DISMISSED**. All other claims and counterclaims should go forward.

## V. Notice of Right to Object.

The Clerk of the Court shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. A party must file their written objections to this Report and Recommendation, if any, **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; frivolous, conclusory, or general objections may be disregarded. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on August 14, 2026.

Henry J. Bemporad
United States Magistrate Judge